UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

JACK B.[1],

                          Plaintiff,

v.                                                            Case # 19-CV-1202-FPG

COMMISSIONER OF SOCIAL SECURITY,            DECISION AND ORDER

                        Defendant.
───────────────────────────────────────

## INTRODUCTION

Plaintiff Jack B. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 17. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In August 2016, Plaintiff applied for SSI with the Social Security Administration (the "SSA"). Tr.[2] 21, 140, 225. He alleged disability beginning in August 2011 due to lower back problems, neck problems, knee pain, left shoulder pain, anxiety, stress, depression, anger, and "hard to deal." *Id.* In September 2018, Plaintiff and a vocational expert appeared and testified at a hearing before Administrative Law Judge Gregory Moldafsky ("the ALJ"). Tr. 21, 31. On October

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

31, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 21–31. On July 15, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II.   Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work

activities. *Id.* § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since his

application date. Tr. 23. At step two, the ALJ found that Plaintiff had several severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, major depressive disorder, generalized anxiety disorder, panic disorder, and a history of substance abuse. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 24.

Next, the ALJ determined Plaintiff's RFC. In relevant part, the ALJ found that Plaintiff could only occasionally: perform simple, routine, and repetitive tasks in a work environment that is not fast paced or that has strict production quotas; and interact with the general public, co-workers, and supervisors. *Id.* At steps four and five, the ALJ found that Plaintiff could perform his past relevant work as a foam fabricator and that there were other jobs that existed in significant numbers in the national economy that he could perform. Tr. 29–31. The ALJ therefore found that Plaintiff had not been disabled from his application date through the date of the ALJ's decision. Tr. 31.

**II.   Analysis**

Plaintiff challenges the ALJ's RFC regarding his mental impairments, arguing that it was erroneous because it was not supported by a competent medical opinion.[3] ECF No. 15-1 at 12–19; ECF No. 20 at 3–12. The Court disagrees.

A claimant's RFC reflects what he "can still do despite his . . . limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). An RFC determination need not "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

---

[3] Plaintiff does not challenge the ALJ's RFC determination with respect to his non-mental limitations. ECF No. 15-1 at 12–19; ECF No. 20 at 3–12.

4

(summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted). In other words, an ALJ's ability to make inferences regarding the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted).

Plaintiff relies on numerous cases in which the ALJ either rejected all medical opinions regarding a plaintiff's capacity to do work or the record contained no such opinions. *See e.g.*, *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020); *Duncan v. Comm'r of Soc. Sec.*, No. 18-CV-369, 2020 WL 1131219, at *3 (W.D.N.Y. Mar. 9, 2020); *Cutre v. Berryhill*, No. 17-CV-135, 2018 WL 3968385, at *3 (W.D.N.Y. Aug. 20, 2018). That is not what occurred here. The ALJ explicitly weighed three opinions regarding Plaintiff's mental capacity to do work and gave weight to at least two. Tr. 28–29.

First, the ALJ gave great weight to the opinion of consultative examiner, Susan Santarpia, Ph.D., "insofar as it suggested that [Plaintiff] has no more than moderate limitations due to mental health symptoms." Tr. 28. On November 1, 2016, Plaintiff was evaluated by Dr. Santarpia. Tr. 348. He reported depressive symptomatology: dysphoric mood, irritability, and social withdrawal. *Id.* His anxiety-related symptomatology included excessive apprehension, worry, and restlessness. Tr. 348–49. He reported that his depression and anxiety improved when he stopped consuming alcohol. *Id.* Plaintiff was cooperative, and his manner of relating and overall presentation was

adequate. Tr. 349. Dr. Santarpia concluded that he had alcohol dependence/abuse in sustained remission and had depressive disorder with anxious features and a history of alcohol induced/exacerbation. Tr. 350–51. Dr. Santarpia further concluded that Plaintiff's prognosis was fair, and she recommended that he consider vocational training/rehabilitation. Tr. 351. She opined that her evaluation was consistent with psychiatric problems, but the problems did not appear to be significant enough to interfere with the Plaintiff's ability to function on a daily basis. Further, she opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. Tr. 350.

The ALJ gave little weight to the state agency psychological consultant's mental assessment. Tr. 29. On November 16, 2016, A. Dipeolu, Ph.D., performed a psychiatric review technique and noted that Plaintiff presented as well groomed; had posture and motor behavior within normal limits; had appropriate eye contact; had fluent speech and a clear voice; had coherent and goal directed thought processes; had a full range of affect; had a euthymic mood; and had intact attention, concentration, and memory. Tr. 143–44. Dr. Dipeolu opined that Plaintiff's mental impairments would not restrict his activities of daily living, did not create difficulties in maintaining social functioning, and did not create difficulties in maintaining concentration, persistence, or pace. Tr. 143. Dr. Dipeolu concluded that "[t]he totality of evidence supports a non severe psychiatric impairment." Tr. 144.[4]

---

[4] Plaintiff argues that the ALJ erred by giving little weight to Dr. Dipeolu's opinion while claiming to give great weight to Dr. Santarpia's opinion. ECF No. 15-1 at 14–15; ECF No. 20 at 8. Plaintiff claims that, because the two opinions are largely consistent, the ALJ did not have a reasoned basis to give one opinion "great weight" while giving the other "limited weight." Tr. 28–29. Although the Court agrees that there does not appear to be a substantive difference between the opinions (Dr. Santarpia's opinion is certainly more detailed), Tr. 143–44, 348–51, Plaintiff has not explained how this alleged error could have impacted

The ALJ finally gave partial weight to the opinion of Plaintiff's treating nurse practitioner, Sharon Yager. Tr. 29. Yager completed a mental impairment questionnaire[5] and noted that Plaintiff was diagnosed with generalized anxiety disorder, panic disorder, and major depressive disorder. Tr. 387–92. She indicated that Plaintiff experiences appetite disturbance with weight change, sleep disturbance, substance dependence, recurrent panic attacks, feelings of guilt/worthlessness, difficulty thinking or concentration, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, generalized persistent anxiety, and hostility and irritability. Tr. 387. She opined that his panic attacks and anxiety would cause at least three absences per month. Tr. 389. She further opined that he might have some difficulty concentrating on more complex tasks and that his ability to function in several areas was severely limited but not precluded. Tr. 389–90. The limitations noted by Yager primarily relate to Plaintiff's ability to deal with stress, manage complex tasks, and interact appropriately with the public, coworkers, and supervisors. Tr. 389–91.

Although the ALJ's RFC assessment does not "perfectly correspond" with any of these opinions, the ALJ was required to meet no such standard. *Matta*, 508 F. App'x at 56. The Second

---

the ALJ's final determination or cited authority that such an error requires remand. Given that both opinions supported the ALJ's conclusion that Plaintiff's mental impairments were not disabling, to the extent this was error, it appears harmless. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." (internal quotation marks and brackets omitted)).

[5] Plaintiff argues that the opinion should be attributed to both Yager and Robyn Taylor, LMSW. ECF No. 15-1 at 6, 10, 15–16. Although the signature is not particularly legible, it appears that Taylor may have also signed the questionnaire. Tr. 392. Even so, Plaintiff has not cited to authority that such an oversight would amount to error warranting remand and has not shown that this error had any impact on the ALJ's conclusion. The ALJ rejected Yager's opinion as inconsistent with the type and degree of treatment needed and because she was not an acceptable medical source. Tr. 29. Taylor's signature on the questionnaire does not alter the type and degree of treatment Plaintiff needed, and Taylor, as a social worker, is also not an acceptable medical source. *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) ("Licensed clinical social workers are not considered acceptable medical sources . . . and their opinions are therefore not entitled to controlling weight.").

Circuit has consistently reaffirmed this proposition. *See, e.g.*, *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (affirming RFC determination that did not align with any particular medical opinion). Here, the ALJ relied extensively on Dr. Santarpia's opinion, but merely departed from that opinion to impose certain additional restrictions: specifically, limitations on Plaintiff's ability to perform more than simple, routine, and repetitive tasks in a work environment that is not fast paced or that has strict production quotas and to interact with the general public, co-workers, and supervisors. Tr. 25.

Plaintiff argues that the ALJ was not permitted to simply select the middle ground between the relevant medical opinions. ECF No. 15-1 at 16–17. Generally speaking, when examining a claimant's functional capacity in a particular area, two diametrically opposed medical opinions will not support an ALJ's adoption of the middle ground. For instance, in *Mariani v. Colvin*, the Second Circuit held that an ALJ's determination that the plaintiff had fifty percent capacity to use his hand was contradicted by both the treating physician's opinion of total inability to use his hand and the consulting physician's opinion that his ability to use his hand was "intact." 567 F. App'x 8, 10 (2d Cir. 2014) (summary order). The Second Circuit explained that "[m]edical evidence at both ends of the spectrum . . . is not substantial evidence for a finding that the extent of the disability is fifty percent capacity" and "[t]here [wa]s no other evidence in the administrative record that provide[d] substantial evidence for the ALJ's fifty percent finding." *Id.*

Here, the ALJ did not assess an RFC limitation in a specific functional area that was the middle ground between two applicable medical opinions, but rather he accepted portions of each medical opinion that directly support his assessed RFC limitations. Plaintiff essentially argues that the ALJ either needed to accept the opinion of Dr. Santarpia in whole or accept the opinion of Yager in whole. ECF No. 20 at 3–4. The ALJ, however, was free to accept portions of a medical

8

opinion without adopting the medical opinion's conclusions in full. *Wethington v. Berryhill*, No. 16-CV-6162, 2017 WL 2129493, at *3 (W.D.N.Y. May 17, 2017) ("[T]here is no absolute bar to crediting only portions of medical source opinions." (internal quotation marks omitted)).

To the extent the RFC does not include additional, mental limitations, it is clearly supported by Dr. Santarpia's opinion and Dr. Dipeolu's opinion. Tr. 25, 143–44, 348–51. Further, the ALJ's limitation of Plaintiff to simple, routine, and repetitive tasks in a work environment that is not fast paced or that has strict production quotas is consistent with both Dr. Santarpia's opinion and Yager's opinion. Tr. 25, 350 (noting that Plaintiff is able to "understand simple directions and instructions[] [and] perform simple tasks independently"), 389–90 (noting that Plaintiff may struggle with concentrating on complex tasks and with normal work stress).

To the extent Dr. Santarpia opined that Plaintiff was capable of performing more complex tasks without a rate restriction or social limitations, it was the ALJ's prerogative to weigh conflicting evidence and to instead choose to reach a finding "based on the totality of evidence," Tr. 29, that was consistent with Yager's contrary opinion regarding Plaintiff's abilities in these areas. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

The ALJ explicitly credited Yager's opinion that Plaintiff had some limitations in interacting with others and in concentration, persistence, or pace. Tr. 29. And, although the ALJ noted that the opined limitations were "out of proportion to the type and degree of treatment needed," *id.*, Yager's assessment in these areas is not inconsistent with the RFC limitations. *See Pellam v. Astrue*, 508 F. App'x 87, 90–91 (2d Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" consultative examiner's opinion but the "opinion

9

largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors); *see also Cook*, 818 F. App'x at 109–10 (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was supported by substantial evidence because the plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations"). A "marked" limitation in an area of mental functioning is not necessarily disabling. *See Blocker v. Saul*, No. 18-CV-6788, 2020 WL 1047737, at *6 (W.D.N.Y. Mar. 4, 2020) (holding that ALJ properly accounted for "marked" limitation "in appropriately dealing with stress" by limiting plaintiff to, *inter alia*, "simple routine tasks" and "occasional interaction with co-workers and the general public"); *Uplinger v. Berryhill*, No. 18-CV-481, 2019 WL 4673437, at *7 (W.D.N.Y. Sept. 25, 2019) ("Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements.").[6]

---

[6] Consistent with Yager's general conclusion that Plaintiff had marked limitations in concentrating, persisting, or maintain pace and interacting with others, she also opined that his abilities in several specific, related areas were "seriously limited, but not precluded." Tr. 389–91 (working "in coordination with or proximity to others without being unduly distracted;" completing "a normal workday and workweek without interruptions from psychologically based symptoms;" performing "at a consistent pace without an unreasonable number and length of rest periods;" accepting "instructions and respond[ing] appropriately to criticism from supervisors," getting "along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes"; responding "appropriately to changes in a routine work setting"; dealing "with normal work stress"; and interacting "appropriately with the general public"). The ALJ's RFC appears to appropriately account for these limitations. *See Hawkey v. Comm'r of Soc. Sec.*, No. 15-CV-996, 2016 WL 6833059, at *4, *10 (N.D.N.Y. Oct. 24, 2016) (holding that ALJ's RFC determination that plaintiff could occasionally interact "with supervisors, coworkers, and the public" was consistent with treating physician's "opinion that [p]laintiff was 'seriously limited, but not precluded' in his ability to accept instructions and respond appropriately to criticism from supervisors and interact appropriately with the general public"), *report and recommendation adopted*, 2016 WL 6833994 (Nov. 18, 2016).

The Second Circuit analyzed a similar set of opinions in *Matta*. 508 F. App'x at 56. In that case, a consultative examiner opined "that plaintiff's attention and concentration were 'intact'" and "that plaintiff was able to relate to others 'adequately'" but that there could be times when plaintiff would have difficulty "maintaining concentration and sustaining social relationships," and plaintiff's treating psychiatrist opined "that plaintiff had 'marked difficulties' in maintaining social functioning[] [and] often experienced deficiencies in concentration, persistence, and pace resulting in a failure to complete tasks in a timely manner." *Id.* (internal brackets omitted). The Second Circuit found that the plaintiff's limitation "to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public" adequately "took account" of these opinions and other record evidence, such as outpatient treatment notes. *Id.* at 55–56. The ALJ here also cited to Plaintiff's mental examination findings, which, on balance, do not appear to be inconsistent with his RFC. Tr. 341 (noting that his goals as to "social functioning" were achieved), 394–95, 422–26 (noting only some depression and anxiety symptoms).[7]

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence; however, even if Plaintiff had cited evidence that substantially supports his position that he is disabled, the Court's task here is to decide whether substantial evidence supports the ALJ's decision, not Plaintiff's contrary position. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). Here, "the ALJ's [RFC] analysis was reasonable and supported by substantial evidence." *Pellam*, 508 F. App'x at 91.

---

[7] Plaintiff's hearing testimony and some mental health examination notes certainly suggest social limitations. Tr. 51 (testifying to difficulty getting along with his last boss), 396–98 (noting he has a short fuse), 414 (noting that mental health symptoms negatively impact relationships, work, and social functioning). The Court cannot say, however, that this evidence demonstrates that Plaintiff is unable to handle the limited range of work specified in his RFC. Tr. 25.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 17, is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 15, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: March 1, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court